In the Matter of Eustacio EDUALINO, Plaintiff-Appellant,

v.

No. 13648.

United States Court of Appeals Seventh Circuit.

Oct. 24, 1962.

Rehearing Denied Dec. 3, 1962.

Rehearing Denied Dec. 3, 1962, en banc.

C. Wylie Allen, Lawrence A. Jacobson, Chicago, Ill., for plaintiff-appellant.

James P. O'Brien, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for defendant-appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Plaintiff, Eustacio Edualino, appeals from a summary judgment affirming an order of the Immigration and Naturalization Service that he be deported and that further denied him the privilege of voluntary departure. Plaintiff had requested the District Court to enjoin the Service from enforcing its order based on the findings of its Special Inquiry Officer.

Plaintiff is a native and citizen of the Republic of the Philippines. He entered the United States as a nonimmigrant student on June 18, 1956, and by subsequent extensions of stay was authorized to remain in this country until June 25, 1959. On July 6, 1959, plaintiff having overstayed his leave, the Service issued its rule to show cause why he should not be deported.

At a hearing before the Special Inquiry Officer on August 5, 1959 plaintiff admitted he was deportable and sought discretionary relief from deportation in the form of permission to depart voluntarily pursuant to Section 244(e) of the Immigration and Nationality Act, 8 U.S.C. § 1254(e).[1] The Special Inquiry Officer's report ordered plaintiff deported and denied his request for discretionary relief on the ground that plaintiff had not affirmatively established his good moral character for the five years immediately preceding his application.

The action to enjoin the Service was based on two grounds: (1) that on the date of the hearing before the Special Inquiry Officer, and prior thereto, plaintiff was legally in this country even though he had overstayed his visa since, during that period, he was under an appearance bond in a bastardy proceeding filed against him in the Municipal Court of Chicago; and (2) that the finding of the Service stigmatizes him as a man of immoral character and thus will detrimentally prejudice him upon his return to the Phillippines.

In support of his first contention plaintiff claims that his failure to leave the United States on time was justifiable and therefore he could not have been deportable. There is a plurality of answers to this contention.

In the first place, plaintiff never requested an extension of his visa beyond June 25, 1959. This, along with the added fact that he admitted deportability, would seem to constitute a sufficient answer to his contention. Furthermore, the

1. Section 1254(e) provides:
   "The Attorney General may, in his discretion, permit any alien under deportation proceedings, * * * to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection."

findings of the Special Inquiry Officer were not dependent for their validity on the outcome of the Municipal Court proceedings, and in fact the bastardy issue had become moot by dismissal of the action prior to issuance of the warrant of deportation in this case.

The record shows that the Special Inquiry Officer acquiesced in granting one continuance of the hearing originally set for July 13, 1959, on the representation of plaintiff that the bastardy case was scheduled for hearing on July 17. At the hearing on August 5, a motion for a further continuance was denied after the examining officer had pointed out that the matter of plaintiff's defense "in the courts of the city, has no bearing on his deportability." After the denial of the motion for a continuance, plaintiff admitted deportability and then made application for leave to depart voluntarily.

The Special Inquiry Officer issued his report on September 23, 1959. The report was affirmed by the Board of Immigration Appeals on November 9, 1959, and the warrant for deportation issued on November 20, 1959. In the interim between the initial report and the issuance of the warrant the Municipal Court dismissed the bastardy proceeding after the State's Attorney indicated he was unwilling to further prosecute the complaint.

In support of his position as to the legality of his stay in this country after June 25, 1959, plaintiff cites a decision of the Board of Immigration Appeals, In The Matter of C....... C......, 3 I. & N. Dec. 221 (1948). In that case a seaman was admitted to this country for a period of twenty-nine days. Shortly thereafter, he was arrested and taken into custody on a charge of smuggling opium. He was still in custody at the end of the twenty-nine day period. Subsequently he was acquitted of the charge and was permitted to depart voluntarily. The Board distinguished his case from one where the alien's criminal act caused his incarceration, and held that "[a]n alien cannot be prevented from departing from the United States in accordance with the terms of his admission and then be found deportable for not so departing."

We do not deem this decision persuasive in the present case. To hold that an alien's visa is automatically extended each time he becomes subject to the process of a court would result in a complete subjugation of the will of Congress to the will and actions of the alien and could easily serve as an inducement to unlawful acts. Reason dictates against such a conclusion. By this we not say that litigants may flout the process of a court. We merely hold that an alien who overstays his leave under the circumstances of this case acquires the status of a deportable alien.

The remaining issue is whether the Attorney General abused his discretion in refusing to allow plaintiff to depart the United States voluntarily. We have examined this question despite plaintiff's misplaced contention that he is being deported as a person of immoral character.

In an earlier application for adjustment of status to that of a permanent resident, plaintiff denied he had ever had sexual relations with the complaining witness in the bastardy proceeding. An investigation by the Service disclosed that the opposite was true, and that in fact he had admitted as much to the Philippine Consul. He persisted in his denial at the hearing on his application for voluntary departure, but later contradicted himself and admitted having spent a night with the complaining witness in a motel. At the conclusion of the hearing he was asked if he desired a continuance in order that he might cross-examine the witnesses who had furnished the information to the Service. Plaintiff waived the opportunity. Thereupon, the Special Inquiry Officer found that plaintiff had not testified truthfully and thus had not carried his burden of establishing the requisite good moral character that would have entitled him to depart voluntarily. It was on this ground that the Hearing Officer denied plaintiff dis-

cretionary relief. We are convinced that this factual determination was correct and that based on this finding the Attorney General's refusal to grant discretionary relief was not arbitrary.

Plaintiff was accorded a fair hearing on all questions pertinent to the issues.

The judgment of the District Court is affirmed.